## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHAD DAVID ABLES, D/B/A POPS ) <br> COVE, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br><br><br> JURY DEMAND |

## **COMPLAINT**

Plaintiff, the United States of America, alleges:

1. The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act" or "FHA"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 to 3619.

2. The United States brings this action under 42 U.S.C. § 3612(o) on behalf of Renee Jones, Deanna Yarbrough, and their two minor children.

## **JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o)(1).

4. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District, the subject property is located in this District, and the defendant resides and does business in this District.

## THE DEFENDANT AND SUBJECT PROPERTY

5. Defendant Chad David Ables, commonly known as David Ables, is a resident of Henderson County, Tennessee. Ables owns and operates residential rental properties in Henderson County, Tennessee, including approximately 21 mobile homes that he operates as "Pops Cove" in Lexington, Tennessee. Ables may own and operate other residential rental properties in or around Henderson County.

6. At all times relevant to this action, Ables was the owner and manager of 26 Lester Lane ("subject property"), one of the homes at Pops Cove.

7. The subject property is a "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

## FACTUAL ALLEGATIONS

8. At all times relevant to this action, Ables controlled all aspects of the management and operation of the subject property including, but not limited to, finding prospective tenants, accepting or rejecting prospective tenants, setting rates for rent and security deposits, collecting rent, accepting requests for repairs, communicating with tenants regarding late rental payments, and evicting tenants.

9. In October 2017, Jones and Yarbrough entered into an oral agreement with Ables to rent the subject property, paid part of the security deposit and rent owed, and moved in with their two children.

10. Shortly thereafter, while Jones was attempting to pay Ables the remaining money owed at that time, Ables began subjecting her to discrimination on the basis of sex, including conduct that was severe or pervasive and unwelcome, such as:

    a. Showing her sexually explicit photos and videos on his mobile phone, including photos of naked women and a video of a woman using a vibrator;

    b. Stating "those are nice boobs," or words to that effect, when showing Jones a photo of a woman's breasts;

    c. Telling Jones that the women in the photos were tenants who had sent him photos and videos in exchange for rent;

    d. Placing his hand on her shoulder without her consent and asking her to come closer, telling her that he is hearing impaired;

    e. Offering to waive the rent if Jones had sex with him;

    f. Offering to waive the rent if Jones sent him sexually explicit photos or videos of herself and Yarbrough; and

    g. Asking about Jones's past sexual conduct and stating that her "pussy must be tight," or words to that effect.

11. Jones rejected Ables's offer to exchange sex or sexually explicit videos or photos for rent and told him not to touch her and that she was feeling uncomfortable. She told other people about the incident that same day, including her mother and Yarbrough.

12. A few days later, Yarbrough confronted Ables about his conduct with Jones. Ables apologized but then began subjecting Yarbrough to discrimination on the basis of sex, including conduct that was severe or pervasive and unwelcome, such as:

    a. Telling Yarbrough that he had "hooked up" a tenant with a limousine and given her a cake in the shape of breasts, saying the tenant had a "nice rack," or words to that effect;

    b. Telling Yarbrough that he exchanged sex or photos and videos with that tenant for rent;

    c. Asking whether Yarbrough knew anyone to "hook [him] up with," or words to that effect;

    d.  Showing her photos on his mobile phone, including scrolling through photos of women's breasts and vaginas; and

    e.  Showing her a video on his mobile phone of a woman masturbating, and telling her the woman in the video was a tenant.

13. Yarbrough told Ables that she did not want to look at the images and videos he was showing her.

14. Within approximately one week after the incidents with Jones and Yarbrough described in paragraphs 10-13, above, Ables turned off the water to Jones and Yarbrough's unit.

15. Sometime before early December 2017, Ables discussed Jones's and Yarbrough's sexuality with another tenant, telling her that if Jones had sex with Ables, "it would change her lifestyle," or words to that effect. The tenant then reported to Jones what Ables had said about her, and Jones discussed it with Yarbrough.

16. Jones and Yarbrough decided not to let their children, especially their daughter, spend much time outdoors, for fear of inappropriate contact with Ables.

17. Ables frequently parked his truck near Jones and Yarbrough's home, and it seemed to Jones and Yarbrough that he was watching them.

18. On one occasion, Jones saw Ables, who was purportedly working on the underpinning of their home, looking through their window while she was having sexual relations with Yarbrough.

19. In early December 2017, Ables called Jones to ask for the rent payment. Jones said she would be home soon to pay. By the time she arrived home, Ables had turned off the water to the subject property. When Jones called to ask why, Ables told her that she owed him $100 and the rent was increasing by $100 per month. After Jones stated she would press charges for sexual harassment, Ables turned the water back on.

20. Jones and Yarbrough paid Ables part of the rent payment on or about December 2, 2017.

21. Ables or his agents turned off the water to the subject property on several occasions during November and December 2017. When there was no water to the subject property, Jones and Yarbrough collected rainwater in buckets to flush their toilets and sent their minor children to stay with family.

22. On or about December 8, 2017, Jones informed Ables that the family would move out of the house at the end of the month, and Ables told her the family needed to vacate immediately.

23. Jones and Yarbrough then reported Ables's conduct to the sheriff's department. Jones reported that, when Ables collected rent, he asked her whether she liked men and whether she would have sex with him, told her that her "pussy has to be tight," or words to that effect, and touched her shoulder and told her to come closer so he could hear her and read her lips. She also reported that Ables turned off the water to their home on or about December 2, 2017, claiming that rent was due, even though Jones told Ables that she would give him the money when she got home.

24. On or about December 8, 2017, Jones and Yarbrough obtained an order from the Court of General Sessions in Henderson County, Tennessee, ordering Ables to stay away from Jones and Yarbrough and their family because of his harassment.

25. Shortly afterwards, Ables or his agent went to the subject property and told Jones and Yarbrough that they had to move out within two weeks. Ables or his agent then physically severed the water line to the subject property.

26. On or about December 15, 2017, Jones and Yarbrough received 10-day eviction notices that were backdated to December 8.

27. Ables raised the rent, tried to evict Jones and Yarbrough, and turned off the water at the subject property at least in part because of their resistance to Ables's sexual advances.

28. On or about December 20, 2017, Jones and Yarbrough filed a breach of contract and breach of quiet enjoyment complaint against Ables, seeking a temporary restraining order to require Ables to turn the water back on.

29. On or about December 23, 2017, Jones and Yarbrough moved out of the subject property.

## HUD ADMINISTRATIVE PROCESS

30. Jones and Yarbrough filed a timely complaint with the Department of Housing and Urban Development ("HUD") on January 29, 2018.

31. In accordance with 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of Jones and Yarbrough's complaint, attempted conciliation without success, and prepared a final investigative report. Based upon the information gathered in the investigation, the Secretary determined, under 42 U.S.C. § 3610(g)(1), that reasonable cause existed to believe that Ables engaged in illegal discriminatory housing practices against Jones and Yarbrough. Therefore, on October 4, 2018, the Secretary issued a Charge of Discrimination, under 42 U.S.C. § 3610(g)(2)(A), charging the defendant with engaging in unlawful discrimination and retaliation against Jones and Yarbrough and their minor children.

32. On October 22, 2018, Jones and Yarbrough elected to have the claims asserted in the Charge of Discrimination resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

33. On October 29, 2018, an Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on the Charge of Discrimination.

34. Following this Notice of Election, the Secretary authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

## CAUSE OF ACTION

35. Plaintiff realleges and incorporates by reference herein the allegations described above.

36. By the actions and statements described above, the defendant has:

    a. Denied housing or otherwise made housing unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

    b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

    c. Made statements with respect to the rental of a dwelling that indicates a preference, a limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c); and

    d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Section 804 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

37. Jones, Yarbrough, and their minor children are "aggrieved persons" as defined in 42 U.S.C. § 3602(i), and have suffered damages as a result of the defendant's discriminatory conduct.

38. The defendant's discriminatory conduct was intentional, willful, and taken in reckless disregard of the rights of Jones, Yarbrough, and their minor children.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that this Court enter an order that:

1. Declares that the defendant's actions, policies, and practices, as alleged herein, violate the FHA;

2. Enjoins the defendant, his agents, employees, and successors, and all other persons in active concert or participation with him, from:

    a. Engaging in discrimination on the basis of sex in any aspect of the rental or lease of a dwelling;

    b. Engaging in discrimination on the basis of sex in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith;

    c. Making statements with respect to the rental of a dwelling that indicate a preference, a limitation, or discrimination based on sex;

    d. Coercing, intimidating, threatening, or interfering with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Section 804 of the Fair Housing Act;

    e. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the defendant's past unlawful practices to the position they would have been in but for the discriminatory conduct; and

    f. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of the defendant's unlawful housing practices; and

3. Awards monetary damages to Jones, Yarbrough, and their minor children in accordance with 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

The United States further prays for such additional relief as the interests of justice may require.

Dated: December 20, 2018

                                    Respectfully submitted,

                                    MATTHEW G. WHITAKER
                                    Acting Attorney General

                                    */s Eric S. Dreiband*
                                    ERIC S. DREIBAND
                                    Assistant Attorney General
                                    Civil Rights Division

| */s D. Michael Dunavant* | */s Sameena Shina Majeed* |
|---|---|
| D. MICHAEL DUNAVANT | SAMEENA SHINA MAJEED |
| United States Attorney | Chief |
| Western District of Tennessee | |
| | |
| */s David Brackstone* | */s Abigail A. Nurse* |
| DAVID BRACKSTONE (#27989) | MICHAEL S. MAURER |
| Assistant United States Attorney | Deputy Chief |
| Western District of Tennessee | ABIGAIL A. NURSE |
| 167 North Main Street, Suite 800 | Trial Attorney |
| Memphis, Tennessee 38103 | Housing and Civil Enforcement Section |
| Phone: (901) 544-4231 | Civil Rights Division |
| dbrackstone@usa.doj.gov | U.S. Department of Justice |
| | 950 Pennsylvania Ave., N.W. -- NWB |
| | Washington, D.C. 20530 |
| | Phone: (202) 353-9732 |
| | Fax: (202) 514-1116 |
| | abigail.nurse@usdoj.gov |