IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

and

DEANNA YARBROUGH,
K.B., MINOR CHILD,
AND K.Y., MINOR CHILD,

      Plaintiffs,

v.                                        Civil Action 1:18-cv-1249

CHAD DAVID ABLES, D/B/A POPS COVE,

      Defendant.

_____

        Members of the jury, it is now time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain the rules of law you must apply; i.e., what the Plaintiffs must prove to establish their position. Then I will explain some rules that you must use in evaluating particular testimony and evidence. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdict that you may return. A copy of these instructions will be available for you in the jury room to consult if you find it necessary.

        Please listen carefully to everything in these instructions.

<u>Your Duties as a Juror</u>

You have two main duties as jurors.  The first is to decide what the facts are from the evidence you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if the Plaintiffs have proved their claims against the Defendant by a preponderance of the evidence.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

The lawyers have talked about the law during their arguments.  But if what they said is different from what I tell you, you must follow what I say.  What I say about the law controls.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decisions in any way.

Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes the testimony of witnesses who have testified under oath, both in person and by deposition; the exhibits that I allowed into evidence; the stipulations that the lawyers agreed to; and the facts that I may have judicially noticed. Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

<u>Consideration of Evidence</u>

You should use your common sense in weighing the evidence. Consider it in light of

your everyday experience with people and events, and give it whatever weight you

believe it deserves. If your experience tells you that certain evidence reasonably leads

to a conclusion, you are free to reach that conclusion.

In our lives, we often look at one fact and conclude from it that another fact

exists. In law we call this an "inference." A jury is allowed to make reasonable

inferences, unless otherwise instructed. Any inferences you make must be reasonable

and must be based on the evidence in the case.

The existence of an inference does not change or shift the burden of proof from

the Plaintiffs to the Defendant.

<u>Direct and Circumstantial Evidence</u>

There are two types of evidence which are generally presented during a trial – direct evidence and circumstantial evidence.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, or say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

<u>Weighing Conflicting Testimony</u>

Although you must consider all of the evidence, you are not required to accept all of the evidence as true or accurate.

You should not decide an issue by the simple process of counting the number of witnesses who have testified on each side.  You must consider all the evidence in the case.  You may decide that the testimony of fewer witnesses on one side is more convincing that the testimony of more witnesses on the other side.

<u>Credibility of Witnesses</u>

Another part of your job as jurors is to decide how credible or believable each witness was.  This is your job, not mine. It is up to you to decide if a witness's testimony was believable, and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all. But you should act reasonably and carefully in making these decisions.  Let me suggest some things for you to consider in evaluating each witness's testimony.

Ask yourself if the witness was able to clearly see or hear the events. Sometimes even an honest witness may not have been able to see or hear what was happening, and may make a mistake.

Ask yourself how good the witness's memory seemed to be.  Did the witness seem able to accurately remember what happened?

Ask yourself if there was anything else that may have interfered with the witness's ability to perceive or remember the events.

Ask yourself how the witness acted while testifying. Did the witness appear honest? Or did the witness appear to be lying?

Ask yourself if the witness had any relationship to the Plaintiffs or Defendant, or anything to gain or lose from the case that might influence the witness's testimony.  Ask yourself if the witness had any bias, or prejudice, or reason for testifying that might cause the witness to lie or to slant the testimony in favor of one side or the other.

Ask yourself if the witness testified inconsistently while on the witness stand, or if the witness said or did something (or failed to say or do something) at any other time that is inconsistent with what the witness said while testifying.  If you believe that the witness was inconsistent, ask yourself if this makes the witness's testimony less believable.  Sometimes it may; other times it may not.  Consider whether the inconsistency was about something important, or about some unimportant detail.  Ask yourself if it seemed like an innocent mistake, or if it seemed deliberate.

And ask yourself how believable the witness's testimony was in light of all the other evidence. Was the witness's testimony supported or contradicted by other evidence that you found believable? If you believe that a witness's testimony was contradicted by other evidence, remember that people sometimes forget things, and that even two honest people who witness the same event may not describe it exactly the same way.

These are only some of the things that you may consider in deciding how believable each witness was.  You may also consider other things that you think shed some light on the witness's believability.  Use your common sense and your everyday experience in dealing with other people.  And then decide what testimony you believe, and how much weight you think it deserves.

<u>Number of Witnesses</u>

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

<u>Deposition Testimony</u>

Certain testimony has been presented by deposition.  A deposition is testimony taken under oath before the trial and preserved in writing.  You are to consider that testimony as if it had been given in court.

<u>Lawyer's Objections</u>

There is one more general subject that I want to talk to you about before I begin explaining the elements of the Plaintiffs' claims.  The lawyers for both sides may have objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence.  Those rules are designed to make sure that both sides receive a fair trial.

And do not interpret my rulings on their objections as any indication of how I think the case should be decided.  My rulings were based on the rules of evidence, not on how I feel about the case.  Remember that your decision must be based only on the evidence that you saw and heard here in court.

<u>Stipulation</u>

The Plaintiffs and the Defendant have agreed, or stipulated, to certain facts.

Therefore, you must accept the stipulated facts set forth in exhibit 1 as proved.

Burden of Proof

The burden is on the Plaintiffs in a civil action, such as this, to prove every essential element of their claims by a preponderance of the evidence.  If the proof should fail to establish any essential element of the Plaintiffs' claims by a preponderance of the evidence in the case, the jury should find for the Defendant on that claim.

Preponderance of the Evidence

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.  If the evidence on a particular issue appears to be equally balanced, the party having the burden of proving that issue must fail.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That is a stricter standard, i.e., it requires more proof than a preponderance of evidence.  The reasonable doubt standard does not apply to a civil case and you should therefore put it out of your mind.

Claims of the Plaintiffs

The Attorney General of the United States has brought this action to enforce a federal civil rights statute commonly known as the Fair Housing Act.  The purpose of the Fair Housing Act is to "provide . . . for fair housing throughout the United States."  42 U.S.C. § 3601.  Among other things, the Fair Housing Act protects people from discrimination on the basis of race, national origin, sex, and other characteristics when they are renting or buying a home or engaging in other housing-related activities.  This includes protecting people from being subjected to harassment through the creation of a hostile housing environment.

Sex discrimination, which includes sexual harassment, is illegal under the Fair Housing Act.  The Fair Housing Act also makes it illegal to coerce, intimidate, threaten, or interfere with any person on account of her exercising or enjoying any right granted or protected by the Fair Housing Act.

In this case, the United States alleges that Defendant Chad David Ables violated the Fair Housing Act.  Specifically, the United States alleges that Defendant Chad David Ables subjected female tenants and prospective tenants (meaning, individuals who sought housing from Defendant Chad David Ables) at residential rental properties he owned and managed to unwelcome, severe or pervasive sexual harassment, including creating a sexually hostile housing environment.  The Attorney General brought this action on behalf of these tenants whom it alleges were victims of Defendant's sexual harassment.

In this case, the United States alleges that Defendant Chad David Ables engaged in what is called a "pattern or practice" of sex discrimination.  The United

States alleges this pattern or practice includes sexual harassment of multiple female tenants and prospective tenants at rental properties the Defendant owned and managed by creating a hostile housing environment.  The alleged pattern or practice also includes coercion, intimidation, threats, and interference with the housing rights of those tenants.

The United States also alleges that Defendant Ables' conduct constitutes a denial of rights granted by the Fair Housing Act to a group of persons, namely female tenants.  The United States need not prove both a "pattern or practice" of discrimination and a "denial of rights to a group of persons" in order to prevail.  It may show either or both.

The Fair Housing Act allows victims who allege sexual harassment to intervene in an action brought by the United States and pursue their own claim for damages.  However, victims are not required to intervene in an action brought by the United States in order to recover damages, and the United States may recover damages both on behalf of individuals who did intervene in this action, and individuals who did not intervene in this action.

In the present case, DeAnna Yarbrough and her two minor children, K.B. and K.Y., have intervened to pursue individual claims against Defendant Ables.  Plaintiff-Intervenors allege that Defendant Ables subjected DeAnna Yarbrough to unwelcome, severe or pervasive sexual harassment, including creating a sexually hostile housing environment, while the Plaintiff-Intervenors resided at a rental property he owned and managed.  Plaintiff-Intervenors also allege that Defendant Ables subjected DeAnna Yarbrough to unwelcome *quid pro quo* sexual harassment.

The United States and the Plaintiff-Intervenors have the burden of proving their claims by a preponderance of the evidence, which means they need only prove that their claims are more likely true than not true.

<u>Position of Defendant</u>

The Defendant denies the claims made by the United States and the Plaintiff-Intervenors.

## Prohibited Conduct Under the Fair Housing Act

The Fair Housing Act makes certain conduct unlawful. I am going to provide you with examples of conduct that violate the Fair Housing Act. If you find that Defendant Chad David Ables has engaged in one or more of these acts by a preponderance of the evidence, you must find that he violated the Fair Housing Act.

First, it is unlawful for an owner or manager of residential rental properties to refuse to rent or otherwise make a house unavailable based on the sex of the tenant or prospective tenant.  The United States and the Plaintiff-Intervenors may show that Defendant Chad David Ables violated this provision of the Fair Housing Act in a number of ways. For example, if the United States or the Plaintiff-Intervenors could show that Defendant Chad David Ables did any one of the following to a female tenant or prospective tenant, that is a violation of the Fair Housing Act:

a.      conditioned the availability of a house, including the rental price, qualification criteria, or standards or procedures for securing the house, on a female prospective tenant's response to a request to engage in sexual conduct or other sexual harassment; in other words, requiring a female tenant or prospective tenant to engage in sexual conduct, or tolerate sexual harassment, in order to obtain housing, obtain housing at a certain price, or obtain housing under certain conditions; or

b.      subjected a female tenant to sexual harassment that caused the tenant to move out of her house; or

     c.     evicted a female tenant, or began eviction proceedings against a female tenant, at least in part, because she would not engage in sexual conduct.

Second, it is unlawful for an owner or manager of residential rental properties to impose different terms, conditions, or privileges related to the rental of a house based on sex. The United States and the Plaintiff-Intervenors may establish that a defendant violated this provision of the Fair Housing Act in a number of ways. For example, if the United States or the Plaintiff-Intervenors have shown that Defendant Chad David Ables did any one of the following to a female tenant or prospective tenant, that is a violation of the Fair Housing Act:

     a.     conditioned the terms related to the rental of a house, such as the amount of rent or security deposit, on a female tenant or prospective tenant's response to a request to engage in sexual conduct or other sexual harassment; or

     b.     subjected a female tenant or prospective tenant to sexual harassment that had the effect of imposing different terms, conditions, or privileges related to the rental of a house; or

     c.     entered the house of any female tenant without notice or permission to make unwelcome sexual advances or otherwise sexually harass the female tenant; or

     d.     failed to make or delayed making repairs because a female tenant refused to engage in sexual conduct; or

e.    interrupted or shut off household utilities and/or services because a female tenant refused to engage in sexual conduct.

Third, it is unlawful for an owner or manager of residential rental properties to make statements with respect to the rental of a house that indicate any preference, limitation, or discrimination based on sex, or that indicate an intent to make any such preference, limitation, or discrimination. The United States and the Plaintiff-Intervenors may establish that a defendant violated this provision of the Fair Housing Act in a number of ways. For example, if the United States or the Plaintiff-Intervenors has shown that Defendant Chad David Ables did any one of the following to a female tenant or prospective tenant, that is a violation of the Fair Housing Act:

a.    made an unwelcome request or demand for sexual activity or other sexual conduct with any female tenant or prospective tenant; or

b.    made an unwelcome comment to any female tenant or prospective tenant that was deliberate and implied any preference, limitation or discrimination based on sex; or

c.    made any statement, written or oral, that indicates, or indicates an intent to make any preference, limitation, or discrimination based on sex.

Fourth, it is unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of rights granted or protected by the Fair Housing Act. The United States and the Plaintiff-Intervenors may establish that a defendant violated this provision of the Fair Housing Act in a number of ways. For example, if the United States or the Plaintiff-Intervenors has shown that Defendant Chad David Ables did any one of

the following to a female tenant or prospective tenant, that is a violation of the Fair

Housing Act:

    a.    interfered with a female tenant's or prospective tenant's enjoyment of her house by engaging in unwelcome and offensive sexual conduct or by making unwelcome and offensive sexual remarks; or

    b.    intimidated any female tenant or prospective tenants, through his words or actions, by making unwelcome or offensive sexual remarks or by engaging in unwelcome and offensive sexual conduct; or

    c.    threatened any female tenant or prospective tenant, if she rejected his sexual advances or did not comply with his sexual requests; or

    d.    retaliated against any female tenant or prospective tenant, at least in part, because she rejected his sexual advances or did not comply with his sexual requests; or

    e.    retaliated against any person because that person made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act; or

    f.    retaliated against any person because that person reported a discriminatory housing practice to a housing provider or other authority.

Each of these acts that I have described for you is a separate and independent

violation of the Fair Housing Act. If you find that Defendant Chad David Ables has

engaged in one or more of these acts by a preponderance of the evidence, you must find that the Defendant has violated the Fair Housing Act.

Sexual Harassment Under the Fair Housing Act

In this case, the United States and the Plaintiff-Intervenors allege that Defendant Chad David Ables violated the federal Fair Housing Act by sexually harassing female tenants and prospective tenants. Under the Fair Housing Act, it is unlawful to sexually harass female tenants or prospective tenants. The Fair Housing Act also makes it unlawful to treat female tenants or prospective tenants differently on the basis of sex in a way that affects their use and enjoyment of their home.

The term "sexual harassment" in this case refers to conduct by a landlord or rental manager toward his female tenants or prospective tenants that includes unwelcome sexual advances, requests to engage in sexual conduct, other physical conduct of a sexual nature, or sexually suggestive comments.

Unlawful sexual harassment in housing may take one of two forms: (1) sexual harassment that creates a "hostile environment" for a female tenant or prospective tenant at one of the defendant's properties, or (2) *quid pro quo* sexual harassment (when a housing benefit is conditioned on sexual activity). The United States' claims are based only on a hostile environment theory. The Plaintiff-Intervenors only need to show by a preponderance of the evidence that DeAnna Yarbrough was subjected to *either* hostile environment sexual harassment or *quid pro quo* sexual harassment. The Plaintiff-Intervenors do not need to show that a female tenant or prospective tenant was the victim of *both* hostile environment sexual harassment and *quid pro quo* sexual harassment to show that Defendant Chad David Ables violated the Fair Housing Act.

24

Hostile Environment Sexual Harassment

The United States and the Plaintiff-Intervenors may show that Defendant Chad David Ables engaged in hostile environment sexual harassment by showing the following things with respect to any female tenant or prospective tenant:

*First*, that Defendant Chad David Ables subjected a female tenant or prospective tenant to verbal or physical sexual advances, requests for sexual activity, sexually suggestive comments, and/or other verbal or physical conduct of a sexual nature; and

*Second*, that these sexual advances, requests for sexual activity, sexually suggestive comments, or other conduct of a sexual nature were based on the tenant's sex; that is, the conduct occurred because the tenant or prospective tenant was female; and

*Third*, that Defendant Chad David Ables' conduct was unwelcome; and

*Fourth*, that the conduct was sufficiently severe or pervasive that a reasonable person in the tenant or prospective tenant's position would have found that the harassment unreasonably interfered with her use, occupancy, or enjoyment of the home; and

*Fifth*, that the female tenant or prospective tenant herself believed that the harassment unreasonably interfered with her use, occupancy, or enjoyment of the home.

If you find that the United States or the Plaintiff-Intervenors have proven these elements by a preponderance of the evidence with respect to a particular female tenant or prospective tenant, then you must find that Defendant Chad David Ables violated the tenant's rights under the Fair Housing Act.

Totality of the Circumstances in Hostile Environment Sexual Harassment

In determining whether the allegedly sexually harassing conduct created a hostile environment for a particular tenant, you should consider the totality of the circumstances.

The factors you should take into account in examining the totality of the circumstances include the frequency of the offensive conduct; the severity of the offensive conduct; whether the comments or conduct were specifically directed at the tenant as opposed to general statements; whether the conduct was humiliating; whether the conduct was physically and/or psychologically harmful or threatening; and how the Defendant's conduct affected the tenant's use and enjoyment of her home.

The more severe and offensive the conduct, the less frequently it needs to occur to create a hostile housing environment. For example, a single incident that involves unpermitted, intentional, sexual touching is sufficient to create a hostile environment.

However, it is not necessary to find physical touching to find a hostile housing environment. Verbal conduct alone can create a hostile housing environment. The more frequent the episodes of offensive conduct, the less severe they need to be to create a hostile environment.

It is also not necessary to find that offensive comments or conduct caused psychological distress to the tenant, or caused economic harm to the tenant, to find a hostile housing environment. It is appropriate to consider sexual harassment that a tenant experienced firsthand as well as sexual harassment that she observed or became aware of that was directed at others.

<u>Quid Pro Quo Sexual Harassment</u>

Alternatively, or in addition to showing hostile housing sexual harassment, the Plaintiff-Intervenors may demonstrate *quid pro quo* sexual harassment by showing that Defendant Chad David Ables did each of the following things with respect to DeAnna Yarbrough:

*First*, that Defendant Chad David Ables explicitly or implicitly requested or demanded that DeAnna Yarbrough engage in sexual conduct in exchange for some housing benefit.  Examples of housing benefits are: (a) reduced rent or no rent; (b) reduced security deposit or no security deposit; (c) allowing a tenant to move into a rental or remain in a rental and avoid eviction; (d) repairs or maintenance work; or (e) permission to live in a larger or better house without additional cost; and

*Second*, that Defendant Chad David Ables' explicit or implicit request or demand was based on DeAnna Yarbrough's sex; that is, the conduct occurred because DeAnna Yarbrough was female; and

*Third*, that Defendant Chad David Ables' conduct was unwelcome; and

*Fourth*, that DeAnna Yarbrough either received a housing benefit after she engaged in sexual conduct or lost a housing benefit after she refused to engage in sexual conduct.

A single incident involving the conditioning of housing benefits on sexual activity is sufficient to establish *quid pro quo* harassment.  If you find that the Plaintiff-Intervenors have proven these elements by a preponderance of the evidence with respect to DeAnna Yarbrough then you must find that Defendant Chad David Ables violated her rights under the Fair Housing Act.

27

Proof That Harassing Conduct Was Because of Sex

   The United States and the Plaintiff-Intervenors must prove by a preponderance of the evidence that Defendant Chad David Ables' harassing conduct was taken because of the tenant or prospective tenant's sex; in other words, that Defendant Chad David Ables' conduct was targeted at female tenants and prospective tenants.  The United States and the Plaintiff-Intervenors are not required to show that Defendant Chad David Ables harassed each female tenant or prospective tenant solely because of her sex, or even primarily because of her sex.  You can find that Defendant Chad David Ables's conduct is unlawful and a violation of the Fair Housing Act even if he had other legitimate reasons to take an adverse action against a female tenant or prospective tenant.  For example, if you find that Defendant Chad Ables took an adverse action, such as evicting a tenant or prospective tenant, failing to make her repairs, interrupting use of household services such as water and air conditioning, or otherwise interfering with the female tenant's rights to enjoyment of her residence because the tenant did not give in to his sexual advances or demands, then his action violates the Fair Housing Act, even if he had other legitimate reasons for evicting the tenant or failing to make repairs.

<u>No Need to File An Administrative Complaint</u>

There is no requirement for a woman who believes that she has been subjected to housing discrimination by a property owner or manager to complain to an administrative agency, such as the Department of Housing and Urban Development, a local Housing Authority, a state or local Human Rights Commission, or any other governmental agency.  The United States may seek damages on behalf of a woman whom the United States maintains has been sexually harassed in violation of the Fair Housing Act, regardless of whether that woman previously filed a discrimination complaint.

Pattern or Practice of Harassment

You must determine whether, through his conduct, Defendant Chad David Ables has engaged in a "pattern or practice" of sexual harassment of female tenants and prospective tenants in violation of the Fair Housing Act.

To prove a pattern or practice of sexual harassment, the United States must show by a preponderance of the evidence that Defendant Chad David Ables engaged in repeated acts of sexual harassment.  That means that the United States must prove that the sexual harassment was not just an isolated event or an accidental, unintentional occurrence, but rather that sexual harassment was a regular practice of Defendant Chad David Ables.

The United States can do this by showing a series of incidents of sexual harassment involving female tenants or prospective tenants who lived in or were interested in living in the Defendant's rental housing.  There is no required minimum number of such incidents that must be proved to show the existence of a pattern or practice.  Even only a few incidents may indicate that sexual harassment was Defendant Chad David Ables' regular way of managing the rental properties he owned.

The United States does *not* need to show that Defendant Chad David Ables sexually harassed or violated the rights of *all* female tenants who lived in his rental properties or prospective tenants who were interested in living in his rental properties. The United States also does not need to show that Defendant Chad David Ables *always* harassed or violated the rights of female tenants or prospective tenants in exactly the same manner.

Finally, in determining whether a pattern or practice of harassment or violation of the tenants' rights exists, you must view the evidence as a whole, rather than examining each of the incidents separately as if they were unrelated parts.

Denial of Rights to a Group of Persons

In addition to alleging that Defendant Chad David Ables engaged in a pattern or practice of unlawful sexual harassment, the United States has separately alleged that Defendant Chad David Ables has denied rights protected by the Fair Housing Act to a group of persons, specifically female tenants.  Specifically, the United States has alleged that by sexually harassing female tenants or prospective tenants based on sex, Defendant Chad David Ables denied them the right to housing of their choice free from harassment and a hostile housing environment.

To succeed on this claim, the United States must prove by a preponderance of the evidence that the Defendant's harassing conduct affected more than a single individual in connection with the rental of housing.

Damages - Introduction

The purpose of the law of damages is to award, as far as possible, just and fair

compensation for the loss, if any, which resulted from the Defendant's violation of the

Plaintiffs' rights.  If you find that the Defendant is liable on one or more of the claims, as

I have explained them, then you must award the Plaintiffs sufficient damages to

compensate them for any injury proximately caused by the Defendant's conduct.

Monetary Damages for the United States Generally

If you decide that Defendant Chad David Ables violated the Fair Housing Act by engaging in a pattern or practice of sexual harassment and/or by denying rights to a group of persons based on sex, you must then decide which female tenants or prospective tenants identified by the United States were affected by the Defendant's actions.  If you determine, by a preponderance of the evidence, that the Defendant engaged in "*quid pro quo*" sexual harassment and/or "hostile environment" sexual harassment against a specific female tenant or prospective tenant identified by the United States, then you must find that the female tenant or prospective tenant is a victim of the Defendant's discriminatory conduct.

Under the Fair Housing Act, the United States has the right to seek monetary damages on behalf of people who were injured by illegal discrimination.  Monetary damages mean financial compensation that can be awarded to an injured party.  If you find the United States has proven that Defendant Chad David Ables sexually harassed or discriminated against any or all of the women whose names I will read, you must decide what amount of monetary damages, if any, are attributable to the Defendant's conduct.

The women on whose behalf the United States seeks monetary damages are as follows:

1.  Bethany Baggett

2.  Cassandra Patterson

3.  Stephanie S.

4.  Sheila Teague

5.  Mahkia Serrano

The United States is seeking two types of monetary damages on behalf of these women—compensatory damages and punitive damages.  There are different rules that apply to each type of damages.  That means you must consider each type of damages separately for each woman.

<u>Monetary Damages for the Plaintiff-Intervenors Generally</u>

If you determine, by a preponderance of the evidence, that the Defendant engaged in "*quid pro quo*" sexual harassment and/or "hostile environment" sexual harassment against DeAnna Yarbrough, then you must find that DeAnna Yarbrough is a victim of the Defendant's discriminatory conduct.

Under the Fair Housing Act, the Plaintiff-Intervenors have the right to seek monetary damages that result from illegal discrimination. Monetary damages mean financial compensation that can be awarded to an injured party. If you find the Plaintiff-Intervenors have proven that Defendant Chad David Ables sexually harassed or discriminated against DeAnna Yarbrough, you must decide what amount of monetary damages, if any, are attributable to the Defendant's conduct.

The Plaintiff-Intervenors are seeking two types of monetary damages: compensatory damages and punitive damages. There are different rules that apply to each type of damages.  That means you must consider each type of damages separately.

## Compensatory Damages – General

If you find by a preponderance of the evidence that a specific female tenant or prospective tenant identified by the United States, or that DeAnna Yarbrough, is a victim of Defendant Chad David Ables' discriminatory conduct, then you must award her sufficient damages to compensate her for any harm or injury caused by the Defendant's discriminatory conduct. Compensatory damages seek to make each victim whole — that is, to compensate each victim fairly for the harm or injury that she has suffered. Compensatory damages are not limited to actual monetary losses and expenses.  A victim of sex discrimination is also entitled to compensatory damages for any physical injury, pain and suffering, or emotional distress that she has suffered because of a defendant's conduct.  You will receive separate instructions on the meaning of emotional distress and how to determine a monetary value for those injuries.

Computing compensatory damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  In all instances, you are to use your discretion in fixing an award of compensatory damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

<u>Compensatory Damages for Emotional Distress</u>

As I stated, a victim of sex discrimination is entitled to compensatory damages for emotional distress. Examples of such injuries include pain and suffering, mental anguish, anxiety, fear, frustration, shock, discomfort, humiliation, intimidation, family strain, loss of privacy, loss of sleep, and other emotional distress that she has suffered because of Defendant Chad David Ables' conduct. While I said previously that damages must be proved, damages such as emotional distress or mental anguish cannot be calculated with mathematical precision. The United States and the Plaintiff-Intervenors must only prove the amount of each victim's emotional distress with as much definiteness and accuracy as the circumstances permit. If you find that one or more of the victims suffered emotional distress or mental anguish as a result of the Defendant's conduct, you must do your best to determine what is a fair amount that will compensate each woman, and the Plaintiff-Intervenors, for the harm they experienced.

Emotional distress may be inferred from the circumstances as well as established through the testimony of witnesses. You may conclude on the basis of a woman's testimony alone that she has experienced emotional distress or mental anguish caused by Defendant Chad David Ables' conduct. You may conclude on the basis of DeAnna Yarbrough's testimony alone that she and her two minor children have experienced emotional distress or mental anguish caused by Defendant Chad David Ables' conduct. In addition, you may conclude on the basis of other witnesses' testimony that a woman experienced emotional distress or mental anguish, or you may infer it from facts in evidence. It is not necessary for any woman to present evidence of

economic loss or medical evidence of mental or physical symptoms to receive

compensatory damages for emotional distress and mental anguish.

<u>Additional Factors to Consider in Awarding Compensatory Damages for Emotional
Distress</u>

In assessing compensatory damages for emotional distress, Defendant Chad
David Ables is responsible for any damages caused even if some of the female tenants
or prospective tenants or the Plaintiff-Intervenors were more vulnerable to emotional
distress than an average person would be.  A person who commits a wrongful act is
liable for damages resulting from any pre-existing mental or physical condition from
which the victim suffered.  In other words, a defendant takes his victims as he finds
them. If you find the Defendant liable, then he is liable for any harm he caused to a
female tenant or prospective tenant or the Plaintiff-Intervenors even if that person
happens to have a fragile psyche and was harmed more than another person might
have been when experiencing similar conduct.

<u>Nominal Damages</u>

If you find by a preponderance of the evidence that a specific female tenant or prospective tenant identified by the United States or the Plaintiff-Intervenors are victims of Defendant Chad David Ables' discriminatory conduct, but you find that they did not experience any economic damages or any mental anguish, physical harm, emotional distress, or other such injuries as a result of the Defendant's discriminatory conduct, you may award them nominal damages, such as $1.00.  Nominal damages are awarded to vindicate rights, here, the right to seek or live in housing free from harassment or discrimination.  An award of a nominal damages would not preclude an award of punitive damages in an amount as you deem appropriate, if you find that punitive damages are justified under the following instructions.

Punitive Damages

If you find that Defendant Chad David Ables engaged in a discriminatory housing practice, you should next consider whether the victims of that discriminatory practice are entitled to an award of punitive damages.  An award of punitive damages may be given as a punishment for intentional or deliberately reckless conduct.  An award of punitive damages may also be given to deter the Defendant or members of the community at large from committing such misconduct in the future.  Accordingly, even if you have found that a female tenant or prospective tenant or the Plaintiff-Intervenors suffered no actual damages as the result of a discriminatory practice, you may still award punitive damages to them.

Under the Fair Housing Act, you may award punitive damages if you find that Defendant Chad David Ables' acts or omissions were motivated by an intent to discriminate. You may also award punitive damages if you find that the Defendant's conduct involved reckless disregard of the rights of the persons on whose behalf the United States has filed this lawsuit or the Plaintiff-Intervenors. Conduct is in reckless disregard of a victim's rights if, under the circumstances, the conduct reflects a callous indifference to or disregard of the federally protected rights of such individuals. If for example, you find that the Defendant had knowledge of the Fair Housing Act but took insufficient steps to prevent harm to a victim, you may award punitive damages on this basis to that victim. Under the Fair Housing Act, it is not necessary for the United States or the Plaintiff-Intervenors show that the Defendant acted with actual malice or evil toward the victims.

If you find that punitive damages are appropriate under the standard I have just articulated, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that have been described to you. However, punitive damages should never reflect bias, prejudice, or sympathy toward either party.

In determining the amount of punitive damages to award to any victim, you should consider the following factors for the Defendant: (1) the reprehensibility, if any, of the Defendant's conduct; (2) the impact of the Defendant's conduct on the victim; (3) the connection, if any, between the victim and the Defendant; (4) the relationship of any award of punitive damages to the emotional harm that was suffered by the victim; (5) what amount of punitive damages, in addition to other damages awarded, is needed to punish Defendant Chad David Ables for his wrongful conduct and to deter  him and others from similar wrongful conduct in the future; and (6) the Defendant's financial condition. If you award punitive damages against the Defendant for more than one victim of a discriminatory housing practice, the amounts you award can be the same or different for each victim.

## 8.01 Introduction

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

The first thing that you should do in the jury room is choose someone to be your foreperson.  This person will help to guide your discussions and will speak for you here in court.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages.  Do not ever write down or tell anyone, including me, how you stand on your votes.  That should stay secret until you are finished.

<u>8.02 Experiments, Research, Investigation and Outside Communications</u>

Remember that you must make your decision based only on the evidence that you saw and heard here in court.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media or application, such as a telephone, cell phone, smart phone, iPhone, Blackberry, or computer, the Internet, any Internet service, or any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter,  Instagram, WhatsApp, Snapchat or other similar electronic service to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the Internet or available through social media might be wrong, incomplete, or inaccurate.  Even using your smartphones, tablets, and computers –and the news and social media apps on those devices – may inadvertently expose you to certain notices, such as pop-ups or advertisements, that could influence your consideration of the matters you've heard about in this courtroom. You are only permitted to discuss the case with your fellow jurors during deliberations

because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.  Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case.  This would unfairly and adversely impact the judicial process.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result, which would require the entire trial process to start over.

### 8.03 Duty to Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that--your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

<u>8.04 Juror Notes</u>

Remember that if you elected to take notes during the trial, your notes should be used only as memory aids.  You should not give your notes greater weight than your independent recollection of the evidence.  You should rely upon your own independent recollection of the evidence or lack of evidence and you should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any more weight than the memory or impression of each juror.

Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

<u>8.05 Verdict Form</u>

I have prepared a verdict form that you should use to record your verdict.  The form reads as follows: _____.

After you have reached a verdict, your foreperson will fill in the form that have been provided for you, sign and date the form and advise the Court Security Officer that you are ready to return to the courtroom.

## 8.06 Court Has No Opinion

Let me finish up by repeating something that I said to you earlier. Nothing that

I have said or done during this trial was meant to influence your decision in any way.